Greene *v.* Greene, Appellant.

Argued March 12, 1942.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes and Kenworthey, JJ.

*A. A. Vosburg,* with him *A. F. Vosburg,* of *Vosburg & Vosburg* and *Robert Stuckenrath,* for appellant.

*Harold W. Houck,* with him *Albert Houck,* for appellee.

Opinion by Stadtfeld, J., July 27, 1942:

This proceeding was a petition to annul the decree in divorce granted to Raymond Greene from Helen A. Greene. As Raymond Greene is now dead, the proceeding was contested by the representatives of the estate, and by his heirs. The reasons advanced for the annulment of the decree in divorce were: (1) that the decree was collusive in its character, being based upon a cash payment made by Raymond Greene to the then attorneys for Helen A. Greene; (2) that the court did not make an independent examination of the evidence, but granted a decree the same day that the master's report was submitted; (3) because when the decree in divorce was entered, Mrs. Greene, by reason of family troubles, was not in a state of mind properly to understand what was being done by her then counsel.

Testimony was taken on both sides by way of depositions, and the case argued before Uttley, P. J. In his opinion, the court refused to annul the decree in divorce. This decision was largely influenced by the conclusion arrived at by the court to the effect that even if the decree in divorce was annulled, Mrs. Greene would be precluded from taking against the will and claiming her share of the estate as widow, because she did not take this action within one year.

After the appeal was taken, the court made an order directing that certain unrelated matters with respect to two suits against the Estate of Raymond Greene should be printed. This order was also appealed from, and these two matters are now before this court, and will be disposed of in one opinion.

The record fails to disclose legally competent evidence to warrant any finding that the appellant, Helen A. Greene, was not mentally competent during the entire proceedings involved in this appeal from the decree dismissing her petition for the annulment of the decree in divorce. The court below did not err in dismissing the petition.

As to collusion in obtaining the decree: Helen A. Greene was represented by reputable and able counsel from the inception of the divorce proceedings on May 6, 1929, until the final decree was entered on August 2, 1930. During that time the appellant and her counsel vigorously contested the case by filing an answer and an amended answer; obtaining a bill of particulars; taking numerous depositions on rules for alimony pendente lite, expenses and counsel fees; endeavoring to obtain a jury trial and appealing from the decree refusing same; and the taking of over 400 pages of testimony by both sides before the master covering a period of five days.

The libellant and all of his witnesses were heard, and all of the respondent's witnesses were heard. Three of her counsel testified in the proceedings to annul that it was concluded by all the attorneys that it would have been impossible for Helen A. Greene to win the case under the evidence produced by the libellant and, that since she had no additional witnesses, it would be useless for her to take the stand. William P. Wilson, Esq., of counsel for respondent in the divorce action testified: "Q. Do we understand that it was contemplated that her testimony was to be taken, and that the testimony was then to be sealed?

"A. Her testimony was not to be taken, because we all really thought that we were on a forlorn hope, and that the proposition was just this: Mr. Greene had expressed the thought that as a parent he wanted to make a plan for the welfare of his daughter, he wanted to arrange that she could have a home, so that she could be supported and she could be educated."

Raymond Greene was a man of means at the time of the divorce proceedings. The lower court, in its opinion and decree on the rule for alimony pendente lite, expenses and counsel fees, found that the libellant's net worth was about $85,000, and that his annual income was about $4000. Libellant was then

directed to pay $600 for counsel fees, $500 for expenses and $150 per month as alimony pendente lite.

The attorneys for Helen A. Greene and the members of her family discussed the future of the respondent and her small daughter and concluded upon a family settlement and an agreement for the custody and support of the daughter, if such could be obtained, because of the hopelessness of her defense. Accordingly, conferences were held between the opposing attorneys at the conclusion of the last hearing on July 11, 1930. A written agreement for the custody, support and education of the minor daughter was concluded on that date. Raymond Greene also agreed to pay to Helen A. Greene the sum of $14,200, $1200 of which was to pay the balance of her counsel fees, $1000 of which was to pay bills for necessaries which she had incurred, and the balance was to be for expenses in connection with the divorce, alimony pendente lite and for her future support and maintenance.

The lower court, in its opinion and decree found that there was no collusion, and this finding is well supported by the facts and evidence. It is well settled that a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties. *Miller v. Miller,* 284 Pa. 414, 418, 131 A. 236; *American National Bank of Camden, Admr. v. Kirk et al.,* 317 Pa. 551, 555, 177 A. 801.

In the case of *Miller v. Miller,* supra, prior to the institution of a divorce action, and in contemplation of a divorce, the parties entered into a trust agreement whereby certain stock, yielding about $3200 per year, was to be transferred to a trustee to hold and pay the income to the wife until eight months after the wife procured an absolute divorce, when the stock was to be transferred to her; that if no divorce was obtained, the trustee was to return the stock to the settlor. The court held at pages 417, 418, "Family settlements are always favored, and, when made to

settle controversies between husband and wife, will be enforced if legally possible ...... if the contract had for its sole purpose the securing of a divorce, the agreement would be held contrary to public policy, and therefore inoperative. ...... Likewise, an arrangement tending to facilitate the granting of a decree is invalid, and where collusion appears, as shown by a promise not to defend ...... it cannot be sustained. However, if the facts negative this idea, a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties ......"

In the case of *American National Bank of Camden, Admr. v. Kirk,* supra, it was stated by the court at page 555: "Taking the whole case into consideration—in the absence of testimony, of which there is none, that the wife said she would not oppose the divorce if decedent would give her the property, or that some one else so stated in her presence without her denying it—we are inclined to consider the presumption of innocence as controlling, especially since there is no averment, in the bill, of a contract between testator and his wife, by which she agreed not to defend the divorce proceeding, if he would give her the Wycombe property, if and when the divorce was obtained, and especially as, also, there is neither averment nor proof that its value was so great as to tend to negative the conclusion that it was but a fair sum to be given to her for her future support."

In the case at bar a family settlement had not been discussed until after the divorce action had been instituted and all the testimony had been taken before the master. There is no evidence now before the court, nor is there any positive assertion that there was an agreement or promise that Helen A. Greene was not to defend or oppose the divorce. All of the attorneys testified that the payment was not in settlement of the divorce case, but for the purpose of establishing a

home and to care for the future welfare of Mrs. Greene and the daughter.

There is no evidence to sustain the averment that the court did not examine the testimony before entering the decree in divorce. The decree itself contradicts such a charge. It is in part as follows:

"Per Cur: We have examined with care the testimony in this case, upon the issue joined by the libel and answer.

The learned master's findings of fact are fully established by the evidence. We adopt his report as our opinion and concur in his conclusion that a decree of divorce should be entered in favor of the libellant . . . . . .
                          THOS. F. BAILEY, P. J. (Seal)"

After the appeal from the decree dismissing the petition to annul the decree in divorce was taken, the court made an order that certain statements of claim and verdicts mentioned in the petition should be made part of the record in the appeal at No. 3 March Term, 1942. The proceedings referred to have no bearing on the proceedings to annul the decree in divorce, and the making of the order in no way affects the disposition of the appeal at No. 3 March Term, 1942. Both appeals are dismissed at costs of appellant.